Isadore Cohn

*v.*

The People of the State of Illinois.

*Filed at Ottawa March 31, 1894.*

1. Statutes—*construction—the title.* It is one of the cardinal principles of construction that the intention of the law-maker is to be found and given effect, and when there is otherwise doubt or obscurity in the act, or its meaning is doubtful, resort may be had to the title of the act to enable the court to discover the intent, and remove what might otherwise be uncertain or ambiguous.

2. Under our constitutional provision, the legislature, in the enactment of laws, must prepare and adopt the title, to the end that it shall express the general subject of the act. Such title can not be resorted to to extend or restrain any positive provision in the body of the act itself.

3. There may be included in an act, means which are reasonably adapted to secure the objects indicated by the title, without rendering the act void, under the constitutional inhibition. When the general purpose is declared in the title, the means for its accomplishment

provided by the act will be presumed to be intended as a necessary incident.

4. TRADE-MARKS—*statute constitutional.* The act entitled "An act to protect associations, unions of workingmen and persons in their labels, trade-marks and forms of advertising," is not in violation of section 13, article 4, of the constitution, which provides that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title."

5. The act to protect associations, unions of workingmen and persons in their labels, trade-marks and forms of advertising, is not obnoxious to the constitution, (art. 4, sec. 22,) which prohibits the passage of local or special laws and the granting of special privileges, etc.

6. SAME—*whether lawful.* To be a lawful trade-mark the emblem must avoid transgressing the rules of morality and public policy. A party may, without condemning or aspersing the product of other manufacturers, commend the article he has for sale, or he may lawfully procure the certificate of others as to the quality of the article he places upon the market.

7. A label to be attached to boxes of cigars read as follows: "This certifies that the cigars contained in this box have been made by a first-class workman, a member of the Cigar Makers' International Union of America, an organization opposed to inferior, rat-shop, coolie, prison or filthy tenement-house workmanship. We therefore recommend these cigars to all smokers throughout the world," etc., and signed by the president of the union: *Held,* that the label was not illegal.

8. EVIDENCE—*proof of adoption of label—certificate of Secretary of State.* In a prosecution for using a counterfeit or imitation of a label, trade-mark or form of advertisment of any person, union or association, knowing the same to be a counterfeit, the certificate of the Secretary of State, under his hand and seal, issued in conformity with section 3 of the act of 1891, to protect associations, etc., in their labels, is sufficient proof of the adoption of such label, trade-mark or advertisement, and of the right to adopt the same.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

Messrs. REED, BROWN & ALLEN, for the plaintiff in error:

The label in this case is not valid as a label, trade-mark or advertisement, but on its face is a libel and aspersion upon all cigars not made by members of the international union. The record is destitute of proof that this label was ever adopted by such union. *United States* v. *Braun,* 39 Fed. Rep. 775.

The statute is void, on the ground it embraced more than one subject. *Leach* v. *People,* 122 Ill. 420; *People* v. *Mellen,* 32 id. 181; *People* v. *Deaconesses,* 71 id. 229; *Middleport* v. *Insurance Co.* 82 id. 562; *Welch* v. *Post,* 99 id. 471; *Larned* v. *Tiernan,* 110 id. 173; *Fuller* v. *People,* 92 id. 182; *Snell* v. *Chicago,* 133 id. 413; *Case* v. *Loftus,* 43 Fed. Rep. 839; *Hronek* v. *People,* 134 Ill. 139; *Search* v. *Ellicott,* 72 Md. 22; *People* v. *Congdon,* 77 Mich. 351; *Davies* v. *Supervisors,* 89 id. 295; *In re Breene,* 14 Col. 401; *Brooks* v. *People,* id. 413.

Mr. M. T. MOLONEY, Attorney General, and assistants T. J. SCOFIELD and M. L. NEWELL, for the People.

Messrs. CLIFFORD & MOORE, also for the People:

As to the title of the act, and its sufficiency, see *Larned* v. *Tiernan,* 110 Ill. 173; *People* v. *Hazelwood,* 116 id. 319; *Hawthorn* v. *People,* 109 id. 302.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a prosecution of the plaintiff in error for the violation of section 2 of an act entitled "An act to protect associations, unions of workingmen and persons in their labels, trade-marks and forms of advertising," in force July 1, 1891. Before a justice of the peace he was found guilty and a fine imposed. On appeal to the Criminal Court by the defendant a trial was had by jury, resulting in a verdict of guilty, and a judgment for $100 fine, and costs, rendered.

Section 1 of the act under consideration provides: "Whenever any person, association or union of workingmen have adopted, or shall hereafter adopt, for their protection, any label, trade-mark or form of advertisement announcing that goods to which such label, trade-mark or form of advertisement shall be attached, were manufactured by such person or by a member or members of such association or union, it shall be unlawful for any person or corporation to counterfeit

or imitate such label, trade-mark or form of advertisement. Every person violating this section shall, upon conviction, be punished by imprisonment in the county jail for not less than three months nor more than one year, or by a fine of not less than $100 nor more than $200, or both." Section 2 is as follows: "Every person who shall use any counterfeit or imitation of any label, trade-mark or form of advertisement of any such person, union or association, knowing the same to be counterfeit or imitation, shall be guilty of a misdemeanor, and shall be punished by imprisonment in the county jail for a term of not less than three months nor more than one year, or by a fine of not less than $100 nor more than $200, or both." Laws of 1891, page 202.

The plaintiff in error was a dealer in cigars, and it is shown that certain witnesses produced, applied to him for the purchase of cigars by the box; that they objected to purchasing unless there were upon the boxes what were known as the "Union Labels;" that there were no such labels upon the boxes produced by the plaintiff in error and offered to be sold. The plaintiff in error thereupon took these boxes of cigars, went into the back part of his store, and returned with boxes having labels on them. The witnesses then paid for them and took them away. The boxes were produced and identified as being those sold to the witnesses by plaintiff in error, and upon each of which was a label purporting to be the label of the Cigar Makers' International Union of America. This label is a small blue paster, on which is printed the following:

"This certifies that the cigars contained in this box have been made by a first-class workman, a member of the Cigar Makers' International Union of America, an organization opposed to inferior, rat-shop, coolie, prison or filthy tenement-house workmanship. Therefore we recommend these cigars to all smokers throughout the world. All infringements upon this label will be punished according to law.

A. STRASSER, *Pres. C. M. I. U. of America.*"

·It is shown that the labels are issued by the association to its members bearing the local stamp and factory number of the particular factory to which they are issued. It was shown that the labels upon the boxes purchased by the witnesses from Cohn were counterfeit imitations of the labels issued by the Cigar Makers' International Union of America. To prove the adoption of this trade-mark by the Cigar Makers' International Union of America, the People introduced in evidence a certificate of the Secretary of State, under his hand and seal, issued in conformity with the provisions of section 3 of the act under consideration. That section provides that every person, association or union of workingmen that has heretofore adopted or shall hereafter adopt a label, trade-mark or form of advertisement, as aforesaid, may file the same for record in the office of the Secretary of State, by leaving two copies, counterparts or *fac similes* thereof, with the Secretary of State, and the Secretary shall deliver to such person, association or union so filing the same, a duly attested certificate of the record of the same. It is then provided that "such certificate of record shall, in all suits and prosecutions under this act, be sufficient proof of the adoption of such label, trade-mark or form of advertisement, and of the right of said person, association or union to adopt the same." It was proved that the Cigar Makers' International Union of America was an association of workingmen,— of cigar makers; that the cigars sold by Cohn were manufactured by Gustave Eddelstone; that at the time he sold the cigars to Cohn Bros., of which firm plaintiff in error was a member, there were no blue labels on the boxes and none were delivered with the cigars; that they were not made by a union factory.

It is objected that the evidence was insufficient to warrant the verdict. It need only be said that there was evidence sufficient to justify the jury in finding the defendant guilty of using a counterfeit or imitation label,·within the meaning of section 2 of the act before quoted.

It is next insisted that the statute is in violation of section 13 of article 4 of the constitution, providing that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The title of the act is, "An act to protect associations, unions of workingmen and persons in their labels, trade-marks and forms of advertising." It is said by counsel, that while there are provisions of the act designed to protect trade-marks, the provisions of sections 1, 2, 4, 6 and 7 relate to the punishment of imitators or counterfeiters and those using such imitations and counterfeits, and are not enacted for the protection of the owners of the labels, trade-marks or forms of advertising, and therefore are not within the title of the act. As said in *Larned* v. *Tiernan,* 110 Ill. 177: "The decisions concur in laying down substantially the rule, that in consistency with that provision there may be included in an act means which are reasonably adapted to secure the objects indicated by the title." (See cases there cited.) When the general purpose is declared in the title, the means for its accomplishment provided by the act will be presumed to be intended as a necessary incident. (*O'Leary* v. *Cook County,* 28 Ill. 534; *People ex rel.* v. *Hazelwood,* 116 id. 319; *McGurn* v. *Board of Education,* 110 id. 123.) The penalties for the counterfeiting and for the use of imitations and counterfeits, while intended as punishment for the violation of public law, are imposed to protect, in the language of the title, associations and others entitled to use labels, trade-marks and forms of advertisement, in the use thereof. The objection is not well taken.

It is next said by counsel that "the statute is wholly void, because it is obnoxious to the constitutional inhibition (art. 4, sec. 22,) which provides that the General Assembly shall not pass local or special laws granting any incorporation, association or individual any special privilege, immunity or franchise whatever." It is urged, that while "persons" are protected in their labels, etc., without regard to their avocations, "asso-

ciations or unions, to avail of the act, must be associations or unions of workingmen." This contention arises from a misapprehension of the statute. It seems clear that the legislature intended that any person, or any association of whomsoever formed, or any union of workingmen, might adopt such label, etc. If it be permissible to refer to the title of this act, this at once becomes apparent. By reference to section 1, before quoted, it will be seen it is there provided, that "whenever any person, association or union of workingmen have adopted a label," etc. The language of section 2 is, "person, union or association," while sections 3 and 4 are the same as section 1. Now, referring to the title, it is seen that it is "An act to protect associations, unions of workingmen and persons in their labels," etc.

Formerly, when the titles of acts were no necessary part of legislation, the title was not to be considered in construing the statute. (*Plummer* v. *People*, 74 Ill. 361; *Wills* v. *Wilkins*, 6 Mod. 62; Endlich on Interpretation of Statutes, sec. 58, and note.) It is, however, otherwise, where, by virtue of constitutional provision, the legislature must prepare and adopt the title, to the end that it shall express the general purposes of the act. It can not be resorted to to extend or restrain any positive provision in the body of the law itself. (*Hadden* v. *Collector, etc.* 5 Wall. 107; *Williams* v. *Williams,* 8 N. Y. 535; *Meyer* v. *Western Car Co.* 102 U. S. 1; *Eby's Appeal,* 70 Pa. St. 311; *Halderman's Appeal,* 104 id. 251.) It is one of the cardinal principles of construction that the intention of the law-makers is to be found and given effect, and where there is otherwise doubt or obscurity in the act, or its meaning is doubtful, resort may be had to the title of the act to enable the court to discover the intent, and remove what otherwise might be uncertain or ambiguous. (*United States* v. *Palmer,* 3 Wheat. 631; cases *supra.*) The term "unions," as thus applied, has come to have a definite and well understood meaning, and it is to be presumed that the legislature, in using

the broader and more comprehensive term "associations," and at the same time making the law applicable to all persons, intended the use of the words in their ordinary sense and signification. There is, indeed, no more reason for saying that by "associations" is meant associations of workingmen, thereby limiting the usual and ordinary meaning of the term, than there is to say that the word "persons," as used in the act, should be construed as applying to workingmen, only. The word "person" would have the effect of extending the act to, and would include, artificial as well as natural persons. (Rev. Stat. sec. 1, chap. 131.) The objection is not tenable. *Hawthorn* v. *People*, 109 Ill. 302.

It is next objected that the label, an imitation and counterfeit of which is alleged to have been unlawfully used by plaintiff in error, could not have been rightfully adopted either as a label, trade-mark or form of advertisement. It is said that it transgresses the rules of morality and public policy. We are referred to the rule in respect of trade-marks, that "to be a lawful trade-mark the emblem must avoid transgressing the rules of morality and public policy," (Brown on Trademarks, sec. 602,) and also to the case of *McVey* v. *Brendel*, 144 Pa. St. 235, decided by the Supreme Court of Pennsylvania, which was a proceeding in equity to restrain the use of imitations of the label adopted by the Cigar Makers' International Union of America. It is conceded there is no statute in that State protecting labels adopted by dealers, etc. The case is cited mainly for the purpose of showing the construction placed upon the blue label by that court, the case having been decided upon other grounds. With all due deference, we are unable to concur in the views of the learned judge who delivered the opinion of the court. By reference to the label heretofore set out, it will be seen that it is a certificate, signed by the president of the Cigar Makers' International Union of America, certifying that the cigars contained in the box upon which it is placed were "made by a first-class workman, a

member of the Cigar Makers' International Union of America, an organization opposed to inferior, rat-shop, coolie, prison or filthy tenement-house workmanship," and it concludes: "Therefore we recommend these cigars to all smokers throughout the world." The purpose, as derived from the label itself, is, to send the cigars out to the public with the assurance that they are made by a first-class workman, who belongs to an order opposed to the inferior workmanship designated. It will be observed that the label attacks no other manufacturer of cigars. It says, simply, in effect, these cigars are not the product of inferior, rat-shop, coolie, prison or filthy tenement-house workmanship. Can it be said that one may not, without condemning or aspersing the product of other manufacturers, commend the article he has for sale? If he may do so himself, may he not procure the certificate of others as to the quality of the article he puts upon the market? If one is engaged in the manufacture of wine, is it an aspersion upon the product of other manufacturers that a wine growers' association certifies that his wine is the pure juice of the grape, free from adulteration? Certainly not. This label does not say, or purport to say, that cigars made by non-union men are of the inferior class mentioned, or that cigars made by non-union men are not free from the impurity or taint to which they might be subjected by such workmanship. It does, in effect, say that cigars are upon the market which are the product of rat-shops, filthy basements, of Chinese establishments, of prisons and tenement-houses, and proposes to assure customers that cigars sold under this label are not the product of such establishments. This and nothing more. And can it be doubted that public policy would be best served if all manufacturers of cigars would truthfully make the like assurance to the public?

We need not extend this discussion. We are of opinion that the label adopted by the Cigar Makers' International

Union of America is neither immoral nor against public policy, and might lawfully be adopted by that body.

Other errors are assigned which have been carefully considered, but are not deemed of sufficient importance to merit discussion.

The judgment of the Criminal Court of Cook county will be affirmed.

*Judgment affirmed.*