Schmalz v. Wooley.

56 649
s57 303

FREDERICK W. SCHMALZ, who sues, &c.,

*v.*

EDWIN WOOLEY et al.

[Filed February 5th, 1898.]

1. A bill on behalf of an association of journeymen hatters against manufacturers of hats, to enjoin them from using a counterfeit of the union label adopted by it, because the factory is not working under the jurisdiction of such association, cannot be sustained where it does not allege that said association is the owner thereof or that it is trading in the hats or caps to which the label is applied or has ever put them on the market.

2. *Gen. Stat. p. 3678 §§ 1, 2, 5* held unconstitutional, as a local law granting to certain associations exclusive privileges.

3. Act of March 23d, 1892, is entitled "A further supplement to an act entitled 'An act to protect trade-marks and labels.'" There was no act entitled "An act to protect trade-marks and labels," the only previous act relating to the subject of labels and trade-marks being the act of 1889 (*Gen. Stat. p. 3678*), entitled "An act to provide for the adoption of labels, trade-marks and forms of advertising by associations or unions of workingmen, and to regulate the same." The latter act was unconstitutional, as a private law granting exclusive privileges.—*Held*, that, assuming that the title to the act of 1892 is to be read as referring to the act of 1889, the former is a supplement to an act to provide for the adoption of labels by associations of workingmen, to which restricted object the act itself must be limited, though the enacting part embraces all kinds of persons.

4. The words "the same" in the title of the act of 1889 (*Gen. Stat. p. 3678*) cannot be read as referring to labels, trade-marks and forms of advertising generally instead of to those only adopted by associations or unions.

5. The title of the act of 1897 (*P. L. of 1897 p. 215*) extends only to labels and trade-marks adopted by associations or unions of workingmen, and the body of the original act, or of any supplement thereto, must be restricted to such labels and trade-marks, and hence such legislation is unconstitutional, as a special law granting an exclusive privilege.

6. The court cannot reject a part of the title of an act for the purpose of saving the act.

*Mr. Joseph A. Beecher,* for the complainant.

*Messrs. Guild & Lum,* for the defendants.

Schmalz v. Wooley.

STEVENS, V. C.

This bill is filed on behalf of an unincorporated association of journeymen hatters known as the Union Hat Makers' Association of Newark, New Jersey, of which complainant is president. It alleges that the association, on September 16th, 1896, caused to be filed for record with the secretary of state duplicate copies of the label, trade-mark, &c., before that time adopted by said association, and that the same has been owned and in actual use by the United Hatters of North America and by the Union Hat Makers' Association, a sub-association, and the other sub-associations and local unions of journeymen hatters throughout the United States and Canada for about ten years past,

" for the purpose of designating, making known or distinguishing goods, wares, merchandise or other product of labor as having been made, manufactured, produced, prepared, packed or put on sale by such persons or associations or unions of workingmen known as journeymen hatters, or by a member or members of such associations or unions,"

and that the class of merchandise to which the label has been appropriated consists of hats and caps upon which the skilled labor required has been done by a member of the United Hatters of North America or of the sub-associations or local unions of journeymen hatters belonging thereto. The label consists of a picture or representation of a globe, over which is written the words " Union Made," and around which is written " The United Hatters of North America." The bill alleges (after stating the rules and regulations of the United Hatters and some other particulars to which it is not necessary to advert) that the defendants Wooley & Crane, of the city of Newark, are and have been for more than three years last past partners in trade, engaged in the business of manufacturing and selling hats in large quantities at their factory in Fair street, Newark, and that they are now, and for the last three years have been, wrongfully and knowingly using a counterfeit or imitation label on all or nearly all hats finished at and sent out from their factory, and that their factory is a " foul shop," not working under the jurisdiction of the said United Hatters of North America. The

Schmalz v. Wooley.

bill prays for an injunction and damages. The defendants demur.

The complainant puts his title to relief, first, on the principle on which equity ordinarily interferes in such cases, and second, on the provisions of those acts of the legislature which provide for the adoption of labels by unions of workingmen.

His first position is clearly untenable in view of the decision in *Schneider* v. *Williams, 17 Stew. Eq. 391*. That case is, in all its essential features, identical with the case in hand. In both cases a label was adopted which was to be placed upon goods made by members of the association only. In both cases such labels had been used for a considerable period of time, and in both cases the defendants were alleged to be conducting their business in such manner as to deceive those who dealt with them. But in neither case did the bill show that the complainant or those whom he represented had any property right in the goods labeled. In referring to the bill then before him, Vice-Chancellor Van Fleet said that it was defective in this respect: It did "not show that the complainants have applied their mark or label to a vendible commodity *of which they are the owners or in which they trade,* and that they have put such commodity, marked with their mark, on the market." The case in hand discloses the same defect. It is not anywhere alleged that the association of journeymen hatters, on whose behalf complainant sues, are the owners of or that they are trading in the hats or caps to which the label is applied or that they have ever put them on the market. Without overruling this decision it would be impossible to give complainant relief on the ground of the ordinary practice of courts of equity in dealing with trademarks or labels. The case of *Schneider* v. *Williams* has been followed in *Weener* v. *Brayton, 152 Mass. 101,* and a similar conclusion has been reached in *McVey* v. *Brendel, 144 Pa. St. 235.*

But it is said that the statute has conferred a new right upon these associations. The first act was passed in March, 1889, the year after the decision in *Schneider* v. *Williams* and presumably in view of that decision. It authorizes the court to enjoin the

Schmalz v. Wooley.

manufacture, use or display of labels made to counterfeit the labels adopted by associations or unions of workingmen. This act is attacked as being contrary to that provision of the constitution of this state which prescribes that the legislature shall not pass private, local or special laws "granting to any corporation, association or individual any exclusive privilege, immunity or franchise whatever." The argument is that the legislature has conferred upon associations or unions of workingmen a right of property in labels or trade-marks which it has not conferred upon other citizens.

What is the nature of the right conferred? Section 1 (*Gen. Stat. p. 3678*) enacts that it shall be lawful for associations and unions of workingmen to adopt for their protection, labels, trade-marks and forms of advertisements announcing that goods manufactured by members of such associations or unions are as manufactured. By section 2 it is enacted that persons counterfeiting these labels, &c., shall be guilty of a misdemeanor, punishable by fine and imprisonment, and by section 3 it is further enacted that every association or union adopting a label may proceed by suit in the courts of this state "to enjoin the manufacture, use, display or sale of any such counterfeits, and that all courts having jurisdiction thereof (1) shall grant an injunction to restrain and prevent such manufacture, use, display or sale," (2) shall award the complainant damages, (3) shall require the defendants to pay to the party injured the profits derived from such use, and (4) shall order the counterfeit destroyed.

Now, it seems to me, by these provisions, the legislature has sought to convert what was only an imperfect right—that is, a right incapable of being asserted in a court of justice against those who violate it—into a complete and perfect one—a right protected by both criminal and civil sanctions. Before its passage the right of property in a label or trade-mark could only be asserted by those who owned or traded in the goods to which it was applied. After its passage it was to become a species of property *per se*, without any reference to whether the owner of the label or trade-mark owned or traded in the goods to which it was applied or not, or to whether it had ever been applied to any goods or not.

This new property right was, however, by the act of 1889, given only to associations or unions of workingmen. No doubt these words apply to unincorporated as well as to incorporated associations and unions. Giving to them this their widest signification, it is self-evident that they embrace neither associations nor unions other than associations or unions of workingmen, nor individual citizens. What, then, the legislature has done is this : It has sought to give to some associations and to some individuals a right or privilege which it has not given to other associations and to other individuals. On this two questions arise—Is the right in question a " privilege" within the meaning of the constitution ? and if a privilege, is it one which may be given solely to associations or unions of workingmen ?

There are two cases which seem to me to have an important bearing on the first question—*Alexander* v. *Elizabeth, 27 Vr. 71,* and *State* v. *Post, 26 Vr. 264.* In the former case it was held that an act which conferred upon the owners of certain race-tracks then existing a right to obtain licenses on conditions more favorable than were accorded to persons who might thereafter wish to obtain them, was a special law granting an exclusive privilege. This privilege was a right conferred upon some persons to acquire, on more favorable terms, what all other persons might acquire on less favorable terms. If it had been given exclusively to those who were more favored and withheld altogether from others, the vice entering in the legislation would have been still more apparent. In *State* v. *Post* it was held that a right to plant oysters, given only to those citizens of the state *now* using any grounds lying under the tidewater of the state for the planting of oysters, was also a *privilege* within the meaning of the constitution, and that inasmuch as the class to which this right was given was a class less extensive than the whole class of citizens who might thereafter wish to plant oysters, subject to such general regulations as the legislature might prescribe, it was special and therefore unconstitutional.

These cases seem to me to be in point. If the rights there accorded were privileges within the meaning of the constitution, then it appears to follow that the exclusive right to use the

words, figures and designs contained in labels or trade-marks given to unions of workingmen, must be equally a privilege, and a privilege, too, of considerable value. The right to the absolute ownership of a distinguishing mark or design, protected by all the sanctions of the law, which may indicate either the origin of the article made, aside from ownership, or the bodies or persons who may have examined or approved it, is undoubtedly a valuable right to many persons under many circumstances.

It being clear that this right so conferred upon associations or unions of workingmen is a privilege, in the constitutional sense, the question then is whether it is a privilege which may be given solely to associations or unions of workingmen—that is, whether the law which confers it is, or is not, special. It is so, unless it embraces the entire class of persons to whose condition or needs it may be appropriate.

The law conferring the privilege must, in the language of Mr. Justice Knapp, in *Randolph* v. *Wood, 20 Vr. 88,* " embrace all and exclude none whose condition and wants render such legislation equally necessary or appropriate to them as a class." Now, the act in question does not embrace all whose condition and wants render such legislation appropriate. In the first place, it extends only to *associations* or *unions* of workingmen, not to individual workingmen, even though those workingmen may be members of an association or union. It would, I think, be difficult to assert that individual workingmen who have acquired a reputation for what they make might not derive the same kind of benefit in greater or less degree from the right to adopt a label protected by the law that associations might derive from it. In the second place, giving to the word " workingman " a very broad significance, a significance perhaps broader than fairly belongs to it, and conceding it to include *all who work,* whether with their hands or with their brains, it could not be held to embrace partnerships, some of whose members contribute capital only, or corporations engaged in manufacturing or trading, and yet some of these firms and companies might find it convenient to have the same privilege, protected by the same sanctions, as is accorded to unions of workingmen, for this right is broader

than the ordinary right to labels and to trade-marks properly so called. It seems plain, therefore, that this act *does* exclude from its operation some classes of persons to whom such legislation would be appropriate, and it is, therefore, open to the constitutional objection of being a special law. In *State* v. *Julow, 129 Mo. 163,* much the same question was involved. The court was there considering the constitutionality of a statute which made it unlawful for employers to discharge members of labor unions on the ground of their membership therein. It was said : " The statute does not relate to persons or things as a class, to all workingmen, but only to those who belong to some lawful organization or society, evidently referring to a trade union, labor union, &c. Where a statute does this—where it does not relate to persons or things as a class, but to particular persons and things of a class—it is a special as contradistinguished from a general law."

But it is said that the defect is cured by the act of 1892, as amended by the act of 1895. *Gen. Stat. p. 3679.* That act so amended provides that whenever any person or any association or union of workingmen has adopted or shall adopt any label, &c., it shall be unlawful to counterfeit it and to use and sell the counterfeit. Thus worded, it embraces, no doubt, all kinds of persons and associations. *Cohn* v. *People, 149 Ill. 486.* The word " person " is inserted and the word " association " is divorced, by the mode of expression, from its exclusive relation to workingmen. The insistment on the part of the defendants is that this supplement does not comply with the constitutional requirement that " every law shall embrace but one subject, and that shall be expressed in its title." The title of the act of 1892 is "A further supplement to an act entitled 'An act to protect trade-marks and labels.'" The title of the act of 1895 is "An act to amend an act entitled 'A further supplement to an act entitled "An act to protect trade-marks and labels,"' approved March 23d, 1892." Now, the difficulty arises here. There is upon our statute-books no act entitled "An act to protect trade-marks and labels." The original act of 1889, whose provisions I have already discussed, is styled "An act to provide for the

adoption of labels, trade-marks and forms of advertising by associations or unions of workingmen and to regulate the same." This was the only act upon our statute-books relating to the subject of labels and trade-marks when the act of 1892 was passed. Under these circumstances, we may deal with the title of the act of 1892 in two ways—we may consider it literally or we may read it as referring to the act of 1889.

If we take it literally, it clearly fails to conform to the constitutional provision above mentioned. "The criterion in these cases," says the late chief-justice, in *Falkner* v. *Dorland, 25 Vr. 410,* "is to ascertain as closely as practicable what impression, as to the object of the statute, its titular expression is calculated to disseminate." The expressed object of the title under consideration is to *supplement* another act, viz., an act *entitled* "An act to protect trade-marks and labels." But as there is no such act upon our statute-books it cannot be *supplemented.* The expressed object of the act of 1892 is therefore incapable of being effectuated. The title "is erroneous in the worst degree, for it is misleading." Taken literally it cannot be sustained.

But it is not necessary that the title of the amended act should be set out *in hæc verba.* Thus an act the title of which was "An act to amend the several acts in relation to the city of Rochester," was held to sufficiently express its object (*People* v. *Briggs, 50 N. Y. 554*), and in *State* v. *Woolard, 119 N. C. 779,* it was said that if sufficient appears in the title to make it clear beyond cavil what prior act is referred to, it will be good. Does it clearly appear in the title of the act of 1892 that the prior act referred to is the act of 1889? While I think this may admit of some doubt, I will assume that because there was only one act upon our statute-books relating to this subject the title of the act of 1892 is to be read as referring to that. Taking this view of the matter, and this is the view that is most favorable to complainant, we are met with another difficulty. The act then becomes a supplement to an act to provide for the adoption of labels, &c., *by associations or unions of workingmen.* To this restricted object the act itself, in its body, must be limited.

Says Mr. Justice Depue, in *Dobbins* v. *Northampton,* 21 *Vr.* 499, "the enacting part of a statute, however clearly expressed, can have no effect beyond the object expressed in the title. To maintain any part of such a statute those portions not embraced within the purview of the title must be exscinded, and if the superaddition to the declared object cannot be separated and rejected the entire act must fail." In that case the operation of the act was, according to its title, limited to certain townships; in its body it extended to all townships. It was held that it must be construed in subordination to its title, and that so construed it was open to the constitutional objection of being special. To the same effect are *Shivers* v. *Newton, 16 Vr. 469; Evernham* v. *Hulit, 16 Vr. 53; Falkner* v. *Dorland, 25 Vr. 409.* The case in hand differs only from the cases just cited in this: In the cases cited the body of the act was, in the first instance, sufficiently general. In the case under consideration the body of the act, when passed, was as special as the title and only became general by amendment. But this, in principle, can make no difference, and so, if authority were needed, the cases hold. *State* v. *Bowers, 14 Ind. 198; Hyman* v. *State, 87 Tenn. 109; Tingue* v. *Village of Port Chester, 101 N. Y. 294.*

It was contended by counsel for complainant that the title of the act of 1889 might be so construed as to make it sufficiently general; that the words "the same" might be read as referring to labels, trade-marks and forms of advertising generally, and not merely to those adopted by associations or unions. If the title in any part of it had dealt with the general subject of labels, trade-marks and forms of advertising, this construction might be possible. But it does not; it only deals with labels, trade-marks and forms of advertising by associations or unions. This limited class of labels, &c., is therefore the only antecedent to which the word "same" can by any possibility refer. There is no other. In *Stockton* v. *Central Railroad Co., 5 Dick. Ch. Rep. 70,* the title under consideration was "An act to authorize the formation of railroad corporations and to regulate the same." There the title was by construction read thus: "An act to authorize the

formation of railroad corporations and to regulate railroad corporations." So construed it embraced not only companies organized under that act, but all railroad companies. Had the title read "An act to authorize construction of railroads by companies using steam for their motive power," I hardly think the court would have been warranted in reading the word "same" as referring only to the word "railroads," to the exclusion of the qualifying words " by companies [*i. e.*, constructed by companies] using steam for their motive power," thus making the act applicable to companies using electricity, horses or other force. The title under consideration plainly has reference not to labels, &c., generally, but only to those adopted by associations or unions of workingmen, and the word " same " can refer only to the labels, &c., so adopted.

I have thus far considered the case on the assumption that the act referred to in the title of the act of 1892 is the act of 1889. It may' be suggested that the words of reference are not sufficiently clear to justify this assumption, and that what the legislature really intended to do by the act of 1892 was to legislate for the first time on the general subject of labels and trade-marks. To give effect to this supposed intention we must drop the words " further supplement " and read the title thus— "An act to protect trade-marks and labels." To do this, however, would be to make a new title, not to take that already made by the legislature. I do not think it has ever been decided that the court may reject a part of the title for the purpose of saving the act. If it may, then a title which expresses a double object can easily be converted into one which expresses a single object. And if the court may reject words I do not see why it may not add them. But the very numerous decisions on this subject in our courts do not give the slightest intimation that the judicial branch of our government possesses any such power. They do show very conclusively that it does not. Those of them which have been adverse to the constitutionality of the legislation under review ought, on the assumption that the court could add or reject words, to have been differently decided. The fact is that the court has no more power to reconstruct the title than

it has to remodel the act itself. It must take both the title and the body of the act as it finds them and consider them accordingly.

I have thus far considered the case as affected by the statutes on the subject which have been enacted up to the time the bill was filed. On April 16th, 1897, the legislature passed an act " to amend and correct" the titles of the acts of 1892 and 1895 and " to declare the true intent and purpose of the titles hereby amended and corrected." This act provided that the title of the act of 1892, entitled "A further supplement to an act entitled 'An act to protect trade-marks and labels,'" should be amended so as to read, "A supplement to an act entitled 'An act to provide for the adoption of labels, trade-marks and forms of advertising by associations or unions of workingmen and to regulate the same.'" The title of the act of 1895 was amended in like manner. Assuming that the act of 1897, section 3 of which provides that it shall be retrospective in its operation, is a proper subject of consideration, it is manifest that it is open to the objection heretofore pointed out, viz., that, although a title might easily have been framed sufficiently broad to embrace the whole subject of trade-marks and labels, the title as actually framed only extends to labels and trade-marks adopted by associations or unions of workingmen. As the title does not go beyond these associations or unions, the body of the original act or of any supplement thereto cannot go beyond them. As it cannot, the restricted legislation in question, as already shown, is open to the objection of being a special law, granting an exclusive privilege.

I have not thought it necessary to consider the other objections raised on the demurrer. I may say, however, that the bill, taken as a whole, does not make it very clear whether the label in controversy is that of the Union Hat Makers' Association or that of the United Hatters of North America. In Schedule B it is certified that it is the label of both organizations, but those portions of the constitution of the United Hatters set forth in the body of the bill would seem to indicate that it is under the exclusive control of the general organiza-

tion. It is expressly stated in section 10 of the bill that the label counterfeited by defendants is the label of this general organization, and it is alleged in section 11 that any use made of the genuine label by the defendants, who are not entitled to use it, is in violation of the constitution of the United Hatters, not of the local association. The bill does not show what is the right of the local association, if any, in the label, or how, as against the general association, it may be or has been adopted by it within the meaning of the statute.

The demurrer should be sustained.