(No. 45243.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. JERRY TIBBITTS, Appellee.

*Opinion filed October 1, 1973.*

SCHAEFER, J., UNDERWOOD, C.J., and WARD, J., dissenting.

William J. Scott, Attorney General, of Springfield (James B. Zagel and E. James Gildea, Assistant Attorneys General, of counsel), for the People.

Giffin, Winning, Lindner, Newkirk & Cohen, of Springfield (James M. Winning and Grady E. Holley, of counsel), for appellee.

Thomas E. Brannigan and John S. Meany, both of Chicago, for *amicus curiae* Beverly Area Planning Association.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, Jerry Tibbitts, was charged with soliciting John Kinnerk to sell his residential property after the defendant had received notice that John Kinnerk did not desire to do so. Following a hearing on the defendant's motion to dismiss the criminal complaint, the circuit court of Cook County held the statute which the defendant was charged with violating, section 70—51(d) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 70—51(d)), unconstitutional. The State appealed directly to this court pursuant to our Rule 603. 50 Ill.2d R. 603.

Section 70—51 of the Criminal Code provides:

> "It shall be unlawful for any person or corporation knowingly:
>
> * * *
>
> (d) To solicit any owner of residential property to sell or list such residential property at any time after such person or corporation has notice that such owner does not desire to sell such residential property or does not desire to be solicited to sell or list for sale such residential property. For the purpose of this paragraph, a person has such notice (1) when the Human Relations Commission has mailed to him pursuant to Section 4.1 of 'An Act to create a Commission on Human Relations and to define its powers and duties', approved August 8, 1947, as now or hereafter amended, a list containing the name and address of such owner, or (2) when he has been notified in writing that the owner does not desire to sell or list for sale such residential property."

The statutory notice provision referred to in the above section of the Criminal Code is found in section 4.1 of "An Act to create a Commission on Human Relations and to define its powers and duties" (Ill. Rev. Stat. 1969, ch. 127, par. 214.4–1), which provides:

"The Commission shall publish *** notice forms which may be executed by owners of residential property who do not desire to sell such residential property or by owners of residential property who do not desire to be solicited to sell or list for sale such residential property. The Commission shall receive, file and index all notices submitted to it on such forms ***, and shall compile suitable lists by *area* of the names and addresses of owners of residential property who submit such forms ***. The Commission shall cause copies of such lists to be mailed by certified mail to those real estate agents and brokers and other persons who are *known* or *believed by the Commission* to be soliciting owners of residential property for the sale or listing of such property *in the area* covered by such list." (Emphasis added.)

We need not consider the defendant's contentions that the statute violates his constitutional right to freedom of speech or his right to contract because we consider the statute which provides for the giving of the notice upon which the prosecution is based constitutes an unlawful delegation of legislative authority to the Human Relations Commission and is thus invalid.

The power to make the laws for this State is a sovereign power vested in the legislature. "On common-law principles, as well as by settled constitutional law, it is a power which cannot be delegated to another body, authority or person." (*People ex rel. Chicago Dryer Co. v. City of Chicago, 413 Ill. 315,* at 320.) In *Hill v. Relyea, 34 Ill.2d 552,* at 555, this court summarized its holdings on the subject of delegation of legislative authority as follows:

"There is a distinction between the delegation of true legislative power and the delegation to a subordinate of authority to execute the law. [Citation.] The former involves a discretion as to what the law shall be; the latter is merely an

authority or discretion as to its execution, to be exercised under and in pursuance of the law. [Citations.] It is an established rule that the General Assembly cannot delegate its general legislative power to determine what the law shall be. However, it may delegate to others the authority to do those things which the legislature might properly do, but cannot do as understandingly or advantageously. [Citations.] Absolute criteria whereby every detail necessary in the enforcement of a law is anticipated need not be established by the General Assembly. The constitution merely requires that intelligible standards be set to guide the agency charged with enforcement, [citations] and the precision of the permissible standard must necessarily vary according to the nature of the ultimate objective and the problems involved. [Citations.] "

This court has also stated that the legislature in delegating to an administrative agency the performance of certain functions may not invest that agency with arbitrary powers. (*Department of Public Works and Bldgs. v. Lanter, 413 Ill. 581, 587; McDougall v. Lueder, 389 Ill. 141, 154.*) The legislature cannot vest an administrative agency with the power in its absolute and unguided discretion to apply or withhold the application of the law or to say to whom a law shall or shall not be applicable. (1 Am. Jur. 2d, Administrative Law, sec. 108.) "Should a statute clothe an administrative officer with the discretion as to the administration of the statute and also clothe him with the right to determine what the law is, or give to him the opportunity to apply it to one and not apply it to another in like circumstances, either would constitute an unlawful delegation of legislative power." *People v. Brown, 407 Ill. 565,* at 581.

Also, due process of law requires that an act shall not be vague, indefinite or uncertain and must provide sufficient standards to guide the administrative body in the

exercise of its functions. *People ex rel. Stamos v. Public Building Com., 40 Ill.2d 164, 174.*

Summarizing the statutory provisions involved: section 70—51(d) of the Criminal Code makes it unlawful to solicit an owner of residential property to sell or list his property for sale after the person soliciting has received notice as provided in section 4.1 of "An Act to create a Commission on Human Relations"; section 4.1 authorizes the Human Relations Commission to receive forms executed by owners of residential property who do not desire to sell or be solicited to sell or list for sale their property; the Commission is required to compile suitable lists *by area* of the names and addresses of owners of residential property who submit such forms; the Commission is then required to cause copies of the lists to be mailed to those real estate agents and brokers and other persons who are *known* or *believed* by the Commission to be soliciting owners of residential property in the *areas* covered by such lists.

The statute does not define what constitutes an "area" and does not specifically state who has the authority to create them. We must assume that the statute vests in the Commission the absolute and arbitrary power to divide the State of Illinois or portions thereof into "areas." The statute establishes no guidelines or standards for the Commission to follow in designating an "area," leaving it entirely to the whim of the Commission what part of the State shall be encompassed within an "area" and to a great extent who shall be prohibited from soliciting those who have executed the forms. For example, it is conceivable that a large number of such forms will be executed by people who reside in a particular neighborhood composed of a few square blocks in the city of Chicago. However, by defining the "area" as the entire city of Chicago a real estate broker who has never solicited the owners of residential property in that neighborhood but who has so solicited in other parts of the city would be

barred from soliciting for the sale or listing of real estate in the neighborhood from which executed forms were received. Conversely, by defining a small geographic "area" a person who may have been soliciting owners of real estate up to the very boundaries of that neighborhood but not within it would not receive a notice from the Commission and would thus be free to solicit the owners who had executed the forms.

It is contended that section 70—51(d) of the Criminal Code is a part of "An Act to prohibit the solicitation or inducement of sale or purchase of real estate on the basis of race, color, religion, or national origin or ancestry." (Ill. Rev. Stat. 1969, ch. 38, par. 70—51 *et seq.*) However, nothing in section 70—51(d) of the Criminal Code or in section 4.1 of the act creating the Commission on Human Relations establishes any guidelines or standards for the Commission to follow to effectuate this purpose. The Commission has the authority to arbitrarily establish "areas" for the purpose of prohibiting the solicitation of the sale of real estate for any purpose, whether or not it is related to the purpose of the Act. In fact, by treating the State of Illinois as one "area" the Commission could effectively prohibit solicitation of those who had executed the forms by all real estate brokers or salesman by the simple practice of sending copies of the lists to all those who are licensed by the State of Illinois to engage in those occupations. The same could be true as to any city or county. Such a legislative intent is not discernible from the statute. We express no opinion as to whether or not the legislature itself could prohibit solicitation or whether such a prohibition would be violative of a person's right of freedom of speech. However, under the arbitrary power conferred by this statute the Commission may accomplish this result and thus is vested with the authority to determine what the law shall be and to whom it shall apply, contrary to the previous decisions of this court cited above.

We also consider as vague and indefinite the requirement that the Commission shall cause copies of the lists to be mailed to those who are *known* or *believed by the Commission* to be soliciting in the area covered by such lists. It is possible that each member of the Commission or succeeding members of the Commission may differently interpret the meaning of the words "known or believed." No guidelines are established for establishing the basis upon which such a "belief" may be formed. It is a common practice for real estate brokers and salesmen to solicit the listing of property for sale either directly or through advertisement in the media. Would this practice constitute sufficient "belief" to justify the Commission in sending copies of the lists to all real estate brokers or salesmen? The Commission as it is now composed may interpret these words in a manner that will preclude certain persons from soliciting in certain "areas" whereas a later Commission may interpret the same words in such a manner as to permit the same persons to solicit in these "areas." Therefore, this vague and indefinite language likewise confers upon the Commission an arbitrary and unrestricted power to determine to whom the law will apply. (See *McDougall v. Lueder, 389 Ill. 141, 154.*) This court stated in *Krol v. County of Will, 38 Ill.2d 587,* at 593: "[A] law vesting discretionary power in an administrative officer without properly defining the terms under which his discretion is to be exercised is void as an unlawful delegation of legislative power. [Citations.]"

We thus hold that section 4.1 of "An Act to create a Commission on Human Relations" (Ill. Rev. Stat. 1969, ch. 127, par. 214.4–1) and section 70–51(d)(1) of the Criminal Code (Ill. Rev. Stat. 1969. ch. 38, par. 70–51(d)(1)) are unconstitutional.

The State in its briefs has raised an issue which requires further comment. The State urges that the purpose of subparagraph (d) of section 70–51 of the

Criminal Code is to protect a person's right of privacy; that is, his right not to be solicited to sell or list for sale his real estate if he does not desire to be so solicited, citing *Rowan v. United States Post Office Dept., 397 U.S. 728, 25 L. Ed. 2d 736, 90 S. Ct. 1484.* If this be the purpose of subparagraph (d), then the amendment of 1969 which added subparagraph (d) added a dimension to the act of 1967 not expressed in the title thereof and did not in the process of the amendment amend the title to the Act. The Act as passed in 1967 by the General Assembly is entitled "An Act to prohibit the solicitation or inducement of sale or purchase of real estate on the basis of race, color, religion or national origin or ancestry." Section 70–51 was a part of that act and as originally enacted contained only subparagraphs (a), (b) and (c), which were the same as subparagraphs (a), (b) and (c) of the present section. All of these subparagraphs are directly related to the subject matter as stated in the title of the Act. However, subparagraph (d), added in 1969, prohibits solicitation by any person after he has had notice that the owner does not desire to sell or to be solicited to sell or list for sale his property. The prohibition of subparagraph (d) is not limited to prohibiting the solicitation or inducement of sale on the basis of race, color, religion, or national origin or ancestry as stated in the title of the Act.

Section 13 of article IV of the constitution of 1870, which was in effect at the time subparagraph (d) was added to section 70–51, provided: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title ***." The purpose of the requirement is to call the attention of interested parties to the provisions of the act or of the amendment and to prevent surprise or fraud upon the legislature by inserting provisions into an act of which the title gives no intimation and which might therefore be unintentionally adopted. (*People ex rel. Stuckart v. Chicago, Burlington & Quincy*

*R.R. Co., 290 Ill. 327, 332; Co-ordinated Transport, Inc.
v. Barrett, 412 Ill. 321;* 1A J. Sutherland, Statutes and
Statutory Construction (4th ed. 1972), sec. 17.01

The legislature when entitling an act may choose to
make the title general or specific. Should the legislature
choose to make the title specific, as in the act now being
considered, then provisions which are not within the scope
of the specific subject chosen for the title may not be
included in the act or added thereto by amendment unless
the title is also amended. (*Dee-El Garage, Inc. v. Korzen,
53 Ill.2d 1; Stolze Lumber Co. v. Stratton, 386 Ill. 334;
People ex rel. Gage v. Village of Wilmette, 375 Ill. 420;
Rouse v. Thompson, 228 Ill. 522.*) The body of the statute
cannot encompass a broader subject than is stated in the
title. 1A J. Sutherland, Statutes and Statutory Construc-
tion (4th ed. 1972), sec. 18.07; *People ex rel. Stuckart v.
Chicago, Burlington & Quincy R.R. Co., 290 Ill. 327, 334.*

Section 8 of article IV of the constitution of 1970
retained the requirement of section 13 of article IV of the
1870 constitution that bills, with certain exceptions, must
be limited to a single subject. However, the 1970 constitu-
tion eliminated the requirement of section 13 of article IV
of the 1870 constitution that the subject of each bill must
be expressed in the title. The defendant in this case is
charged with having committed the offense on May 17,
1971, prior to the effective date of the 1970 constitution
and the validity of the Act as it applies to this defendant
must be judged by the requirements of the 1870 constitu-
tion.

Although a holding on this point is not necessary to
the decision of this case, we view the State's contention as
raising a serious question as to whether section 70–51(d)
of the Criminal Code is violative of section 13 of article IV
of the constitution of 1870.

Having decided this case on the basis of the unlawful
delegation of authority to the Human Relations Commis-

sion, it is unnecessary for us to pass on the validity of section 70—51(d)(2) of the Criminal Code. This section relates to solicitation following the receipt of written notice that the owner does not desire to sell or list for sale his property.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. JUSTICE SCHAEFER, with whom MR. CHIEF JUSTICE UNDERWOOD and MR. JUSTICE WARD join, dissenting:

Mr. Chief Justice Underwood, Mr. Justice Ward and I are unable to agree with the opinion of the majority. As the case was presented in the trial court and in this court, the primary attack upon the validity of the statute was based upon a supposed violation of the defendant's constitutional right of freedom of speech. The majority does not discuss that contention, which appears to have been laid to rest by the opinion of the Supreme Court of the United States in *Rowan v. United States Post Office Department* (1970), 397 U.S. 728, 25 L. Ed. 2d 736, 90 S. Ct. 1484. Instead, the court invalidates the statute upon one State constitutional ground, and gratuitously reflects doubt on its validity on another.

The ground on which the statute is stricken down is based upon an obvious misreading of the statute. The opinion says: "*** by defining the 'area' as the entire city of Chicago a real estate broker who has never solicited the owners of residential property in that neighborhood but who has so solicited in other parts of the city would be barred from soliciting for the sale or listing of real estate in the neighborhood from which executed forms were received." The statutory prohibition is *not* against soliciting in the *area* or the *neighborhood* from which the notices have been received; it is against soliciting those persons

who have given notice to the solicitor, or have caused notice to be given to him through the Human Relations Commission, that they do not want to be solicited.

The majority's preoccupation with whatever ambiguity inheres in the words "area," "known" and "believed" seems most unusual. The Commission was authorized to establish areas in order to simplify its task of record-keeping and notice-giving, and not, as the majority implies, a means of deciding "what the law shall be and to whom it shall apply." Without the power to designate areas in order to facilitate its task, the Commission would indeed have to resort, in the language of the court's opinion, to "the simple practice of sending copies of the lists to all those who are licensed by the State of Illinois to engage in those occupations [as brokers or salesmen]." The *Rowan* case makes it clear that the "simple practice" to which the majority refers would violate no one's constitutional rights, but we find nothing in the Constitution that compels the Commission to waste public money in sending notices to brokers or salesmen whom it knows or believes are *not* soliciting in the area from which a notice or notices have come.

While the legislature has used the term "area" in this statute as a means of assisting the Commission in discharging its clearinghouse duties under the statute, it has also used the term "area" in other contexts which involve much more significant delgations of authority. For example, the Forest Fire Protection District Act confers the following authority upon the Director of the Department of Conservation:

> "Whenever, as ascertained from investigation, hearing or otherwise, the Director determines that certain geographic areas of contiguous territory in the State are in need of special protection from forest fires, the Director may designate and establish one or more intensive forest fire protection districts, consisting of one or more counties or portions thereof, in such area. The boundaries of each district so established shall be defined in the order of the Director ***."

That act authorizes the Director to require a burning permit in such areas and provides criminal penalties for burning without a required permit within the area designated as a district by the Director. Ill. Rev. Stat. 1971, ch. 57½, pars. 72, 73, 78.

If we were to apply the reasoning of the majority to this simple legislative delegation, we would have to say, paraphrasing the language of the majority: "We must assume that the statute vests in the Director [Commission] the absolute and arbitrary power to divide the State of Illinois or portions thereof into 'areas.' The statute establishes no guidelines or standards for the Director [Commission] to follow in designating an 'area,' leaving it entirely to the whim of the Director [Commission] what part of the State shall be encompassed within an 'area,' and to a great extent who shall be prohibited" from burning. This court has not heretofore adopted such a hostile attitude toward legislative enactments. Instead it has held that legislatively conferred discretion "is not to be construed as being uncontrolled," but is to be exercised only within limits that are relevant to the legislative purpose. *Brown v. City of Chicago* (1969), 42 Ill.2d 501, 506.

In our opinion the majority's hostile attitude toward the legislature's use of the words "known" and "believed" is unwarranted. Of course those words have a subjective content, but that has not been thought to bar their use in legislation. It is sufficient to say, we think, that if the concepts of "knowledge" and "belief" are to be discarded because of their subjective quality, wholesale revisions of legal doctrines, both civil and criminal, will be required.

We are also unable to agree with the majority's dictum that the statute as amended in 1969 is invalid under section 13 of article IV of the Constitution of 1870. The statute is entitled: "An Act to prohibit the solicitation or inducement of sale or purchase of real estate on the basis of race, color, religion or national origin or ancestry." It was enacted in 1967. Paragraph (a) of section 1 makes it

unlawful to knowingly "solicit for sale, lease, listing or purchase any residential real estate within the State of Illinois, on the grounds of loss of value due to the present or prospective entry into the vicinity of the property involved of any person or persons of any particular race, color, religion or national origin or ancestry." Paragraph (b) makes it unlawful to knowingly "distribute or cause to be distributed written material or statements designed to induce any owner of residential real estate in the State of Illinois to sell or lease his property because of any present or prospective changes in the race, color, religion or national origin or ancestry, of residents in the vicinity of the property involved." Paragraph (c) makes it unlawful to intentionally "create alarm, among residents of any community by transmitting in any manner, including a telephone call whether or not conversation thereby ensues, with a design to induce any owner of residential real estate in the State of Illinois to sell or lease his property because of any present or prospective entry into the vicinity of the property involved of any person or persons of any particular race, color, religion or national origin or ancestry." Ill. Rev. Stat. 1969, ch. 38, par. 70—51.

In 1969 the General Assembly added paragraph (d), which is set forth in the majority opinion. At the same time it added section 4.1 also set forth in the majority opinion, to the Human Relations Commission Act. Although the entire act which the defendant is charged with violating is aimed at solicitation based upon considerations of race, color, religion or national origin or ancestry, the majority engages in a lengthy discussion of the validity of the Act on the hypothetical assumption that the added paragraph was intended to introduce into the Act an entirely different purpose: the protection of "a person's right of privacy; that is, his right not to be solicited to sell or list for sale his real estate if he does not desire to be so solicited." The majority treats this assumed purpose as though it existed entirely apart from the considerations of

race, color, religion or national origin or ancestry that permeate the statute. We do not agree that it is appropriate to discuss the validity of the provision as if it were designed to protect privacy for its own sake. No such issue was briefed or argued. In any event, to assume a construction which would render a statute invalid as beyond the scope of its title runs counter to our earlier decisions, which have held that:

> "It is a principle of construction often announced, that the intention of the law-makers is to be found and given effect, and where the language of the act is obscure or its meaning doubtful, resort may be had to the title thereof to enable the court to discover the intent and make certain what is otherwise uncertain or ambiguous. (*Cohn v. People,* 149 Ill. 486; *United States v. Palmer,* 3 Wheat. [16 U.S. at] 631. The legislative intent must be gathered from the entire act rather than from one clause, sentence or section thereof, and courts may not confine their attention to the one part or section to be construed. (*People v. Giles,* 268 Ill. 406; *Warner v. King,* 267 id. 82.) ***

> * * *

> *** Where a statute is susceptible of two constructions, one of which would render it unconstitutional and the other protect its validity, the latter construction is to be adopted if such can reasonably be done. (*People v. James,* 328 Ill. 262; *People v. Shader,* 326 id. 145.)" *Illinois Bell Telephone Co. v. Ames* (1936), 364 Ill. 362, 365-66, 369.

The primary fault that we see in the majority's reasoning lies in its fixation upon certain of the statutory terms—"area," "known," "believed"—in isolation, without reference to the statutory context as a whole or to the evil at which the statute is directed. Such a narrow and intense

focus upon almost any word or phrase will eventually reveal layer upon layer of ambiguity. Only if courts examine statutes from a broader perspective can the General Assembly legislate effectively. As we have indicated, we think the First Amendment arguments advanced by the appellant were answered by *Rowan v. United States Post Office Department* (1970), 397 U.S. 728, 25 L. Ed. 2d 736, 90 S. Ct. 1484. Finally, the court's analysis of the question whether the title of the statute accurately reflects its content seems to us unnecessary, and its conclusion, that it does not, wrong.