The Honorable Wayne Dowd State Senator P.O. Box 2631 Texarkana, AR 75501
Dear Senator Dowd:
This is in response to your request for an opinion concerning Regulation 12 which was promulgated by the Insurance Commissioner pursuant to A.C.A. 23-87-117. The regulation governs credit life and disability insurance. Specifically you have asked four questions which are restated as follows:
 (1) Does the Insurance Commissioner have authority to promulgate the `grandfather clause' found in Regulation 12?
(2) If so, is Regulation 12 a valid exercise of that authority?
(3) Is the grandfather clause constitutional?
 (4) Is Regulation 12's cap on commissions (which commissions include stock ownership in, and dividends received from insurance companies) constitutional?
For the reasons that follow, it is my opinion that the promulgation of the grandfather clause by the Insurance Commission represents an impermissible encroachment by the executive branch into a legislative, function in violation of Art. 4, 1 and 2 of the Arkansas Constitution. It is, however, also my opinion that the basic forty percent commission cap set by Regulation 12 will withstand constitutional scrutiny.
I. BACKGROUND
Our analysis must begin with the statutory grant of the Commissioner's authority to promulgate rules on this subject, which is found in A.C.A. 23-87-117. That section provides:
In order to assure that the premium rates charged or to be charged for credit life or credit disability insurance are reasonable in relation to benefits provided, the commission may, after due notice and a hearing, issue rules and regulations establishing the maximum compensation payable to an agent, a broker, or a creditor, or any affiliate, associate, subsidiary, director, officer, employee, or other representative of or for the creditor, for writing or handling the insurance, including commission, dividends, premium adjustments, policy writing fees, underwriting gain, or any compensation or renumeration (sic) in whatever form.
Regulation 12, which was promulgated pursuant to the statute above, sets a commission cap of forty percent. In addition, the regulation contains an open-ended list of "things of value" which may be defined as compensation. The regulation then lists three things which are not to be considered "compensation." The second of these, (the so-called "grandfather clause"), is found at 14.3(b) and excludes:
 (b) Reinsurance premiums paid to, or underwriting profits generated by, an insurer or reinsurer owned by, controlled by, or under common control with a credit insurer, an agent, broker, creditor, group of creditors, or any affiliate, associate, subsidiary, director, officer, employee or other representative of or for such credit insurer, creditor or group of creditors on accounts in existence with such insurer or reinsurer on January 27, 1986. . . .
The negative implication of this provision is that all such premiums and profits generated on accounts coming into existence after January 27, 1986, are defined as compensation, and must be included in applying the forty percent cap.
Section 14.3(b) of Regulation 12 exists because prior to its enactment, insurance companies had a practice of opening Arizona insurance companies (Arizona requires only $150,000.00 in capital for this purpose), providing stock in such companies to their credit agents, and thereafter reinsuring the Arizona companies' business, thereby creating an increase in value of the stock held by the agents. This scheme provides agent compensation in a purposefully indirect fashion. When Regulation 12 was adopted, the desired result was to effect a cap on all commissions for the purposes advanced in A.C.A. 23-87-117, but concern was expressed as to destroying existing property ownership rights in the stock discussed above, and as to the political possibility of enactment of any cap which did not preserve these interests. Thus, the grandfather clause was adopted.
II. THE COMMISSIONER'S AUTHORITY TO ENACT THE GRANDFATHER CLAUSE.
An analysis of the Commissioner's authority under Section23-87-117 must be undertaken in light of principles of administrative law. An administrative agency, such as the Insurance Commission, is a part of the Executive branch of government. If the Commissioner has exceeded his authority by promulgation of the grandfather clause, he has intruded upon a legislative function in violation of Arkansas Constitution Art. 41 and 2, concerning separation of governmental powers. In this regard, ____ (NOTE: typist cannot read the next several words in the opinion) ____ the legislature has no right to delegate the lawmaking power to commissions and boards, but may delegate the power to determine facts upon which the law makes its action depend. McArthur v. Smallwood, 225 Ark. 328, 281 S.W.2d 428
(1955); and that while the legislature may not delegate the law making power, it may by providing guidelines, delegate the power to determine certain facts on which the operation of a statute is made to depend. Venhaus v. State ex rel. Lofton, 285 Ark. 23,684 S.W. 252 (1985). Additionally, it has been held that a regulation contrary to the relevant statute may not be promulgated, State ex rel. Atty. Gen. v. Burnett, 200 Ark. 655, 140 S.W.2d 673 (1940), and if the regulation is beyond the legitimate interpretation of a statute, it must fall so that the true congressional intent can be effectuated. Kettell v. Johnson Johnson, 337 F. Supp. 892 (E.D.Ark. 1972). Finally, it has been held that:
 The legislature cannot vest an administrative agency with the power in its absolute and unguided discretion to apply or withhold the application of the law or to say to who a law shall or shall not be applicable. (Citation omitted). `Should a statute clothe an administrative officer with the discretion as to the administration of the statute and also clothe him with the right to determine what the law is, or give him the opportunity to apply it to one and not apply it to another in like circumstances, either would constitute an unlawful delegation of legislative power.' (Citation omitted).
Illinois v. Tibbitts, 56 Ill.2d 56, 305 N.E.2d 152 (1973) at p. 155.
It would thus appear, from the language above, that enactment of the grandfather clause was outside the Commissioner's authority. The statute conferring his authority can give rise to no inference that the legislature intended different commission caps for different classes of agents. While this may be an oversimplification of what Regulation 12 does, the effect of the grandfather clause is that some credit agents are entitled to receive more true "compensation" than others.
It should be noted at this point, however, that at least one court has reached a contrary conclusion. In Automobile Trade Association of Maryland, Inc., v Insurance Commissioner of Maryland, 292 Md. 15, 437 A.2d 199 (1981), the Court of Appeals of Maryland concluded that a statutory provision giving the Insurance Commissioner the right to establish maximum rates of commissions payable to agents and brokers empowered the Commissioner to set different caps for affiliated and non-affiliated agents. However, it is my opinion that the Automobile Trade Association case is distinguishable. Although the court noted a modern tendency towards permitting liberal grants of administrative powers, and discussed the rationale for the adoption of commission caps, it did not analyze or address just how the statutory grant of power conferred authority to create different caps for different classes of agents, stating flatly, "[w]e conclude it was entirely within the power of the administrative agency to make the rule which differentiated between the commissions of affiliated and non-affiliated agents." 437 A.2d at 204. The opportunity was manifest, as the language of the Maryland statute itself lends to this conclusion. That statute, although similar to A.C.A.23-87-117, gives the Commission the authority to establish "[m]aximum rates of commission which may be paid to agents and brokers." [Emphasis added]. The language is drafted in the plural, as if to contemplate more than one "rate" of commission, and more than one class of agents and brokers. In contrast, the Arkansas statute is drafted in the singular, giving the Commissioner the authority to establish "the maximum compensation payable to an agent, a broker . . . or other representative." Moreover, the Arkansas statute does not contemplate more than one maximum compensation rate. In fact, its language seems to authorize only one. As such, the Commissioner does not have authority to implement more than one maximum rate, which he has done through the definition of compensation.
The effect of Regulation 12, 14.3(b) is to allow insurers with Arizona reinsurer schemes in effect prior to January 27, 1986, to pay their credit agents a higher rate of compensation than other insurers. The statute, A.C.A. 23-87-117, does not authorize the commission to effect this result by regulation. The grandfather clause found in Regulation 12 therefore is, in my opinion, violative of Arkansas Constitution Art. 4, 1 and 2. Given this conclusion, resolution of questions two and three becomes unnecessary.
III. CONSTITUTIONALITY OF CURTAILING COMMISSIONS AND STOCK OWNERSHIP.
Your final question assumes that the "grandfather clause" is declared invalid, thereby subjecting all agents to a forty percent commission cap. It then assumes that an Arkansas agent owns stock in an insurance company for which he or she produces sales. You then conclude that Regulation 12, as altered above, would preclude this ownership, and inquire as to the constitutionality of this preclusion.
It must be noted initially that Regulation 12, if altered as you suggest, would not prohibit this stock ownership altogether, but would only prohibit the receipt of "compensation", including the benefits of stock ownership, in excess of forty percent. The regulation would permit this form of compensation; it would only prohibit the receipt of more than forty percent of premium amount charged in stock benefit compensation plus all other compensation. Your question then, is whether the State of Arkansas can prohibit an individual from owning stock, and receiving benefits therefrom, and whether the state can prohibit an individual from earning as much compensation as his labor will bring him.
It is clear in the field of insurance at least, that the state does possess such authority. O'Gorman Young v. Hartford F. Ins. Co., 282 U.S. 251 (1930). Admittedly, the individual's interest is impaired, but this interest must fall to a legitimate exercise of a state's police power.
The foregoing opinion, which I hereby approve, was prepared by Assistant.