THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN L. SIMPSON *et al.*, Defendants-Appellants.

(No. 12463; ▮▮▮▮▮▮▮▮▮▮▮)

Fourth District—December 30, 1974.

SMITH, J., dissenting.

Gary L. Haddock, of Pittsfield, for appellants.

William E. Lowry, State's Attorney, of Pittsfield, for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendants John L. Simpson and David R. Waggoner were indicted for a violation of section 5(c) of the Cannabis Control Act (Ill. Rev. Stat. 1971, ch. 56½, par. 705(e)), which makes it unlawful to knowingly deliver more than 500 grams of a substance containing cannabis. After a bench trial, defendants were found guilty as charged. They were each sentenced to the Department of Corrections for an indeterminate term of 1 to 3 years. Defendants appeal from their judgment of conviction.

On appeal, defendants urge three issues: (1) that the Cannabis Control Act is unconstitutional; (2) or, in the alternative, that if the statute

is constitutional, then their guilt was not established beyond a reasonable doubt; and (3) their jury waiver was not voluntarily given.

On September 1, 1972, defendants were arrested by several Illinois Bureau of Investigation (IBI) agents for unlawful delivery of more than 500 grams of substance containing cannabis. On September 5, 1972, the State's Attorney executed an "information" charging defendants, and on that same date, an "arraignment" was held thereon. Therein defendants were found indigent, counsel was appointed, and defendants pleaded not guilty to the charge. On October 17, 1972, defendants filed a motion for discovery, which was granted by the court. The State was ordered to comply with the motion by November 28, 1972. However, on that date, the State filed a motion for continuance of discovery order. The basis for this motion was that defendants had not been indicted for the charges pending, nor had they waived indictment; and that under Supreme Court Rule 411 (Ill. Rev. Stat. 1971, ch. 110A, par. 411), the criminal discovery rules do not become applicable until after indictment or *information*, and they will not operate prior to or in the course of a preliminary hearing. The State requested that the continuance be given until such time defendants are indicted by a grand jury or they waive indictment. The record reveals that this motion was never ruled upon by the court.

On December 27, 1972, defendants were indicted. An arraignment on the indictment was held on January 5, 1973, and defendants again pleaded not guilty to the charges. At the conclusion of the hearing, the State filed a motion for discovery and a request for notice of alibi defense.

Defendants' trial was set for February 13, 1973. On February 6, 1973, the State answered defendants' request for a discovery that originally had been filed on October 17, 1972. Therein the State disclosed the names of six witnesses—all of whom were IBI agents—listed certain evidence held by the State, and had appended thereto an IBI prosecutive summary, two IBI investigative memorandums, two surveillance memorandums, IBI arrest data sheets on both defendants, and a report by Kenneth Vail, an IBI chemist, concerning the chemical content of the two brown paper bags taken from defendants when arrested.

On February 13, defendants' trial was reset for February 20. On the 20th, defendants requested another continuance to be set until the next jury setting. The basis of the motion was that the State had not complied with discovery until February 6, that discovery was voluminous, and defense counsel had had inadequate time to prepare a sufficient defense. Counsel noted that all of the State's witnesses were located in Springfield. Moreover, counsel had not been able to recover the contents of the two paper sacks for the purpose of having it analyzed by an independent expert. After counsel's argument, the following colloquy took place:

"THE COURT: The number of this case is 72-CF-12, and it has been on a while and of course the Court has continued the jury setting one week for the specific purpose of affording the defendants more time. Unless there is some definite prejudice, I see none, the motion will not be allowed.

THE COURT: Gentlemen, are you ready to proceed on People vs Simpson and Waggoner?

MR. LOWRY: We are ready, your Honor.

MR. HADDOCK: Your Honor, again we are not ready to proceed and have had no opportunity to contact any of the State's witnesses. Probably to preserve that point for appeal it will be necessary to go through the mechanics of the trial. At this time on behalf of Mr. Simpson and Mr. Waggoner I wish to explain to them what the situation is and see what they wish to do. *My problem is they want to waive a jury trial in order to give opportunities to consult with the witnesses.* I think it puts them in a poor position; in order to preserve my points they have to go to trial. [Emphasis supplied.]

THE COURT: I have no particular specific showing that there is any prejudice that will accrue to these defendants and the motion is overruled. And we are ready to start the trial.

MR. HADDOCK: Your Honor, I ask for a few minutes to consult with the defendants.

THE COURT: Very well.

[Recess]

MR. HADDOCK: Please the Court I have talked to Mr. Simpson and Mr. Waggoner about their case and at this time they offer to waive their right to a jury trial."

Thereafter, defendants waived their right to a jury trial in open court. The court then set May 3, 1973, as the date for defendants' bench trial. On that date, defendants filed a motion to dismiss the indictment for various reasons. The motion was denied; thereafter the bench trial commenced.

In the course of the trial, the State called Kenneth Vail, who testified regarding the chemical analysis of the two bags of contraband seized from defendants. Also, IBI agents Gully, Sandusky, and Tipton testified concerning the actual encounter with defendants. They detailed the preliminary negotiations and other events surrounding their attempt to purchase the contraband from defendants. They also testified extensively about the arrest itself. After the State rested its case, defendants offered an oral motion for directed verdict. This was denied. Then the defense

rested. No closing arguments were given due to the extensive nature of the argument on the motion for directed verdict.

The court found defendants guilty of the offense of unlawful delivery of cannabis and defendant Simpson was also found guilty of the "offense of unlawful use of weapons as alleged in the indictment." The record does not contain such charge either by way of criminal complaint or indictment.

On June 22, 1973, a hearing was held on defendants' motion for a new trial. That motion was denied, and thereafter a presentence hearing was held. At the conclusion of the hearing, the court sua sponte continued the hearing until July 10, 1973, so that further investigation could be completed to determine whether the defendants were "old experienced peddlers" or merely neophytes as they claimed. On July 10, the court sentenced both defendants to an indeterminate term of imprisonment of 1 to 3 years.

Defendants urge that the Cannabis Control Act is unconstitutionally vague; that it fails to adequately apprise an individual of what constitutes a violation of the provisions of the Act relating to manufacture and delivery of cannabis, and what the penalties will be.

Specifically, defendants were charged with violation of section 5(e) of the Act which states:

"It is unlawful for any person knowingly to manufacture, deliver, or possess with intent to deliver, or manufacture, cannabis. Any person who violates the section with respect to:

\* \* \*

(e) more than 500 grams of any substance containing cannabis is guilty of a Class 2 felony." Ill. Rev. Stat. 1973, ch. 56½, par. 705(e).

Section 3(a) of the Act in question defines cannabis as follows:

"As used in this Act, unless the context otherwise requires:

(a) 'Cannabis' includes marihuana, hashish and other substances which are identified as including any parts of the plant Cannabis Sativa, whether growing or not; the seeds thereof, the resin extracted from any part of such plant; and any compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin, including tetrahydrocannabinol (THC) and all other cannabinol derivatives, including its natural occurring or synthetically produced ingredients, whether produced directly or indirectly by extraction, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis; \* \* \*." Ill. Rev. Stat. 1973, ch. 56½, par. 703.

Defendants suggest that the term "substance" as it is found in section 5

—which also appears throughout the entire Act in question—is indefinite, vague and uncertain. They contend that "By definition, a 'substance containing cannabis' cannot itself be cannabis; otherwise, you would have 'a cannabis containing cannabis'." Furthermore, defendants urge that the statute purportedly places undue emphasis on the substance containing cannabis rather than upon the amount of cannabis itself; and that, for example, one gram of cannabis in a 50-lb. sack of flour would result in a Class 2 felony under section 5(e). Defendants' argument is that the one gram of cannabis would taint the noncannabis substance and miraculously turn the flour into a "substance containing cannabis." We cannot accept defendants' argument that the statute envisions such alchemy.

■■ In order for a statute to be valid, it must be complete, certain, and definite in all its essentials. (*People v. Tibbitts*, 56 Ill.2d 56, 305 N.E.2d 152.) A statute is incomplete if one who reads it fails to discern his rights and obligations thereunder, or is incapable of intelligently appreciating how he will be affected by its operation. At the root of this rule is a concept of fairness. (*Colten v. Kentucky*, 407 U.S. 104, 32 L.Ed. 2d 584, 92 S.Ct. 1953.) We have examined the statute in question and find that it is not vague or abstract.

Section 3(a) sufficiently delimits what is or is not meant by the term cannabis and other substance relating thereto. In light of the certain limitations, when section 5(e) refers to any substance containing cannabis, it can only be interpreted to mean those substances defined in section 3(a). To find otherwise would render the statute constitutionally infirm. Also, section 5(e) is definite as to the penalty which can be imposed for a violation of that provision.

■■ Next, defendants urge that their guilt was not established beyond a reasonable doubt. We cannot agree. The testimony of the various prosecution witnesses was certain and uncontroverted. Those questions which did arise dealt with the credibility of the witnesses who testified, and such matters are properly left up to the trier of fact to determine. The findings of guilt by the trial court sitting as the trier of fact will not be disturbed unless the evidence is so improbable as to leave a reasonable doubt of defendants' guilt. *People v. Reese*, 54 Ill.2d 51, 294 N.E.2d 288.

Lastly, defendants submit that their jury waivers were involuntarily given due to the circumstances under which they were made. We agree.

■■ In all serious criminal matters, a defendant has the absolute right to a jury trial (*Duncan v. Louisiana*, 391 U.S. 145, 20 L.Ed.2d 491, 88 S.Ct. 1444); and a defendant has the corresponding right to waive a trial by jury as long as the waiver is understandably and voluntarily made. (*People v. Rivera*, 34 Ill.2d 575, 216 N.E.2d 786.) As a general proposition, whether a defendant has understandably made his waiver

rests on the peculiar facts of each case. It cannot be governed by a rigid formula. (*People v. Palmer*, 27 Ill.2d 311, 189 N.E.2d 265.) It is the duty of the trial court to ascertain whether a defendant's waiver of jury is understandably and voluntarily executed. *People v. Clay*, 19 Ill.App.3d 296, 311 N.E.2d 384.

In the *Rivera* case, the defendant waived his right to a trial by jury and after a bench trial was found guilty of voluntary manslaughter. On appeal, he contended he was denied his right to a trial by jury because the judge expressed annoyance when defense counsel, who had previously informed the judge that defendant would opt for a bench trial, stated that defendant desired a jury trial. The trial court displayed impatience with counsel and expressed a desire to take care of other matters. After a colloquy with the court, counsel consulted with his client and a decision was reached to waive a jury trial. The supreme court stated:

> "The argument is that because the judge was noticeably perturbed his statements had the effect of coercing defendant into changing his mind and waiving the jury. In our opinion this contention must be sustained." (34 Ill.2d 575, 577; 216 N.E.2d 786, 787.)

The rationale of *Rivera* is dispositive.

■■■ We are mindful that all requests for continuances are addressed to the sound discretion of the trial court. (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(e).) In this case, the refusal to grant the continuance amounted to an abuse of discretion. The State failed to comply with discovery until 7 days prior to the original date set for trial, several months after defendants had been arrested and arraigned on an information which charged them with a violation of the Cannabis Control Act. All of the State's witnesses disclosed in discovery resided in Springfield, several miles from the site of the trial. Moreover, an essential part of the State's case was based on the results of the chemical analysis performed upon alleged contraband, and defendants' counsel did not have an opportunity to acquire this evidence from the authorities and have it independently analyzed. The cumulative effect of these facts was that on the date of the trial defense counsel could not be prepared. Defendants were put in the untenable position of choosing between a jury trial at a time when their counsel was unprepared and a bench trial at a later date when presumably counsel would be better able to present their defense. The trial court showed its impatience with counsel over the fact that the case had already been continued on one prior occasion, and that the purpose of that continuance was to afford defendants more time to prepare. In order to buy time, defendants waived their right to a jury trial. The trial judge, as the guardian of defendants' constitutional rights, failed to ascertain whether these waivers were voluntarily executed.

Accordingly, the judgment of the circuit court is reversed and this cause is remanded for a new trial.

Reversed and remanded.

SIMKINS, P. J., concurs.

Mr. JUSTICE SMITH, dissenting:

I cannot agree that *Rivera* is dispositive of the jury-waiver issue. The facts and circumstances in that case are exactly the converse of what we have in this case. In the opinion itself there is nothing from which it can be fairly concluded that the trial court abused its discretion. It is clear that the court had continued the jury setting one week for the specific purpose of affording the defendants more time. They had it; they didn't use it; and the bald statement of trial counsel without more as shown in this opinion that he "had no opportunity to contact any of the State's witnesses" is a frail peg upon which to hand an abuse of discretion. This is particularly true where no sound reason is shown to justify a continuance. There is even no showing that interviewing the State's witnesses would have aided the defense or that they were not readily available for such purposes.

In all other respects, I would concur.