NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190226-U

NO. 4-19-0226

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 27, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| KENNETH NEWLAND JR., | ) | No. 18CF199 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Amy C. Lannerd, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Knecht and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The denial of the defendant's motion to continue a jury trial is, because of the lack
of a posttrial motion raising that issue, unpreserved for appellate review, and absent
a clear or obvious abuse of discretion in the denial, the doctrine of plain error does
not avert the forfeiture.

¶ 2    The circuit court of Adams County denied a motion by defendant, Kenneth

Newland Jr., to continue his jury trial. This, seemingly, prompted Newland to waive a jury trial

and to opt for a bench trial. About a month later, in the bench trial, the court found him guilty of

the charged offenses. In a subsequent hearing, the court sentenced him to imprisonment. Newland

appeals.

¶ 3    Newland argues to us that the denial of his motion for a continuance made his

waiver of a jury trial involuntary. The denial, he claims, had the effect of coercing him to buy more

time for preparation by waiving a jury, thereby causing the trial to be put off for a little while and to be rescheduled for a bench trial.

¶ 4 We conclude that, by failing to file a posttrial motion, Newland has forfeited this issue. We further conclude that, because the circuit court's refusal of a continuance was not clearly or obviously an abuse of discretion, the doctrine of plain error does not avert the forfeiture. Therefore, we affirm the judgment.

¶ 5 I. BACKGROUND

¶ 6 On March 14, 2018, the State charged Newland with unlawful possession of methamphetamine (720 ILCS 646/60(b)(1) (West 2018)), violation of bail bond (720 ILCS 5/32-10 (West 2018)), and resisting a peace officer (*id.* § 31-1(a)). The only alleged act of resistance was Newland's "refus[al] to place his hands behind his back when being apprehended on a valid warrant," to quote from count III.

¶ 7 On March 20, 2018, Newland was released on his own recognizance.

¶ 8 On April 3, 2018, Newland appeared with his appointed defense counsel and was arraigned. He was informed of the charges. He pleaded not guilty and demanded a trial by jury.

¶ 9 On April 26, 2018, the State filed a certificate that it had fulfilled a discovery request by defense counsel.

¶ 10 On June 12, 2018, defense counsel raised a doubt as to Newland's fitness to stand trial. The circuit court ordered a fitness examination, which found Newland to be fit. Consequently, on September 11, 2018, defense counsel withdrew his suggestion that Newland might be unfit to stand trial. The court scheduled the jury trial for November 5, 2018.

¶ 11 On October 9, 2018, the circuit court granted a motion by Newland to dismiss his appointed defense counsel and to represent himself.

¶ 12 On October 15, 2018, at Newland's request, the circuit court entered an order allowing Newland to review the report of the fitness examination and directing the State to provide him certified copies of his prior convictions that the State might use to impeach him if he testified. Also, the order provided that Newland "may review the case file on current cases." The reason for that latter provision is unclear to us. See 705 ILCS 105/16(6) (West 2018) (providing that "[a]ll records *** required by law to be kept by such clerks shall be deemed public records, and shall at all times be open to inspection ***, and all persons shall have free access for inspection and examination to such records").

¶ 13 On October 26, 2018, Newland informed the circuit court that he had taken the order to a clerk in the circuit clerk's office but that the clerk had been unable to read the order (which was a fill-in-the-blank document written in cursive). But see *id.*

¶ 14 On November 2, 2018, the circuit court wrote as follows in an order: "Public Defender Todd Nelson is directed to release his file in the above case to the defendant." The court also entered an order declaring as follows: "Pursuant to the order of [October 15, 2018,] defendant may review his psychiatric report and all discovery pertaining to this case."

¶ 15 On November 5, 2018, the day the jury trial was scheduled to occur, the circuit court asked Newland if he had a list of witnesses. Newland answered that, because the "motion hearings *** pretty much delayed everything else," he did not have a list of witnesses "on hand." The court asked Newland why he was unprepared for trial. We quote from Newland's brief:

> "Mr. Newland explained that he needed to call a couple of people, including a 'mental doctor,' and other witnesses from 'General Motors.' [Citation to record.]
>
> The State objected to the continuances and asked the court to, "[i]n any event[,]' ask Mr. Newland for a proffer of the witness[es'] testimony. [Citation to

record.] The court then asked Mr. Newland what relevance a psychologist would have on his case, and explained that if Mr. Newland has 'witnesses that pertain to this case, the fact that [he was] arrested or attempted to be arrested and allegedly had methamphetamine,' it needed to know who the witnesses are and what they would say. [Citation to record.] Mr. Newland explained that the State is claiming that he 'ran from the police. There's a couple witnesses from the Smoke House that witnessed that [he] did not run from the police.' [Citation to record.]"

The court got the impression that Newland was merely stalling. The court refused to continue the jury trial.

¶ 16    Newland then proposed waiving a jury. The circuit court responded that he had the right to waive a jury if he wanted to do so. The court asked him if anyone had made any threats or promises to induce him to waive a jury. Newland answered in the negative. The court asked him if he was waiving a jury voluntarily. He answered in the affirmative. The court gave Newland a jury waiver form, which he signed. The court then continued the case for the scheduling of a bench trial.

¶ 17    The bench trial took place on December 14, 2018. In the midst of the trial, Newland requested a short recess for a bathroom break. Before granting the recess, the court warned Newland that, if he did not return, the trial would nevertheless proceed in his absence. Newland did not return. The presentation of evidence resumed. At the conclusion of the bench trial, the court found Newland guilty of all three counts, revoked his bond, and issued a warrant for his arrest. The court waited to set a sentencing date until he was apprehended.

¶ 18    Newland never filed a posttrial motion.

¶ 19          On April 5, 2019, the circuit court sentenced Newland to imprisonment for three years and six months, to be followed by one year of mandatory supervised release.

¶ 20          This appeal followed.

¶ 21          II. ANALYSIS

¶ 22          In Newland's view, it was an abuse of discretion to deny him additional time to prepare for a jury trial, considering that he "did not have access to all of his discovery until three days before the scheduled jury trial."

¶ 23          Newland acknowledges that he never raised this issue in a posttrial motion and that, to preserve an issue for review, the issue must be reiterated in a written posttrial motion (which, as we said, Newland never filed). See *People v. Roman*, 2013 IL App (1st) 102853, ¶ 19. He argues, however, that the doctrine of plain error should avert the forfeiture because this question of whether he voluntarily waived a jury implicates a substantial right. See *People v. Stokes*, 281 Ill. App. 3d 972, 976 (1996).

¶ 24          Newland compares himself to the defendants in *People v. Simpson*, 24 Ill. App. 3d 835, 841 (1974), who, to buy more time to prepare for a trial, felt that they had no choice to waive their right to a jury trial. The appellate court agreed with the defendants that "their jury waivers were involuntarily given due to the circumstances under which they were made." *Id.* at 840.

¶ 25          The circumstances in that case were as follows. Soon after they were arraigned, the defendants filed a motion for discovery, and the circuit court granted the motion. *Id.* at 837. The State, however, moved "for [a] continuance of [the] discovery order," arguing that the discovery rules did "not become applicable until after indictment or [i]nformation." *Id.* This motion by the State was never ruled upon. *Id.* Several months went by, and, a week before the scheduled jury trial, the State finally complied with the defendants' request for discovery. *Id.* The discovery, as it

turned out, was "voluminous," listing several witnesses for the prosecution—and all of whom were in Springfield, Illinois, a considerable distance from Pike County, where the trial was to occur. *Id.* Defense counsel moved for a continuance, explaining to the court, " 'Your Honor, again we are not ready to proceed and have had no opportunity to contact any of the State's witnesses." *Id.* at 838. Nor had there been any time to have the alleged cannabis "independently analyzed." *Id.* at 841. Finding no showing of prejudice, the circuit court denied defense counsel's motion for a continuance. *Id.* at 838. Upon receiving that ruling, defense counsel turned and consulted with his clients. Then he told the court that his clients had decided to " 'waive a jury trial in order to give opportunities to consult with the witnesses.' " *Id.*

¶ 26     Later, in a bench trial, the defendants were convicted of trafficking in cannabis. *Id.* at 839. On appeal, they contended that their jury waivers had been involuntary. *Id.* at 836-37. The appellate court agreed. *Id.* The State had failed to comply with discovery until seven days before the scheduled date of trial and several months after the arraignment. *Id.* at 841. Consequently, the "[d]efendants were put in the untenable position of choosing between a jury trial at a time when their counsel was unprepared and a bench trial at a later date when presumably counsel would be better able to present their defense." *Id.* By denying the defendants' motion for a continuance, the circuit court had abused its discretion (*id.*), and the abuse of discretion had prejudiced the defendants' right to a jury trial (see *id.* at 840).

¶ 27     Is the present case fairly comparable to *Simpson*? No, it is not. *Simpson* is distinguishable in two ways.

¶ 28     First, in the present case, the State did not delay complying with defense counsel's request for discovery. Rather, the State served the discovery materials on defense counsel the same month that Newland was arraigned. In the statement of facts in Newland's brief, we see no

representation that (1) Newland requested from defense counsel the discovery materials that the State had provided and (2) defense counsel turned him down. Also, it is worth noting that the circuit court had only Newland's word for it that he had not received the discovery materials from defense counsel. The prosecutor, on the other hand, told the court that he intended to check with defense counsel. Then, in the next hearing, the prosecutor stated that it was his understanding that Newland had indeed received the discovery materials. So, there was a dispute on this question.

¶ 29     Second—and more to the point, perhaps—it is unclear that Newland's purported unreadiness for trial had anything to do with the discovery materials or with his needing more time to review to them. When the circuit court asked Newland why he was unprepared for trial, Newland did not answer, like the defense counsel in *Simpson*, that he needed more time to review the discovery materials or to interview witnesses listed in the discovery materials. Rather, he answered that he "needed to call a couple of people, including a 'mental doctor,' and other witnesses from 'General Motors,' " to quote from his brief. Also, Newland "explained that the State [was] claiming that he 'ran from the police," and that "[there were] a couple witnesses from the Smoke House that witnessed that [he] did not run from the police.' " But the State was not accusing Newland of having run from the police. The State was accusing him of refusing to put his hands behind his back when he was being arrested. As for the " 'mental doctor[ ]' and [the] other witnesses from 'General Motors,' " Newland offered no explanation of how they would contribute to the fact-finding enterprise.

¶ 30     In deciding whether to grant a continuance to secure the attendance of a witness, the circuit court must consider whether the expected testimony of the witness would be material to issues in the case. Therefore, "[a] defendant seeking a continuance to secure the presence of a witness must make an offer of proof of that witness'[s] proposed testimony." *People v. Moore*,

397 Ill. App. 3d 555, 561 (2009). Without such an offer of proof, "[t]he court has no way of knowing the materiality of testimony sought to be introduced." *Id.* Newland claimed he needed a continuance to secure the attendance of some witnesses. He did not state the witnesses' names. Nor did he explain, by an offer of proof, how the expected testimony of these witnesses would be material to any of the issues in the trial. The court, therefore, was within its discretion by concluding that the proposed continuance was nothing but a stalling tactic.

¶ 31 In sum, *Simpson* stands for the principle that an abuse of discretion in the denial of a motion for a continuance is reversible error if it prejudices the defendant's right to a jury trial, compelling the defendant to buy more time for preparation by waiving a jury. For that principle from *Simpson* to apply to the present case, there had to be an abuse of discretion in the denial of a continuance. We find no such abuse of discretion, let alone a clear or obvious abuse of discretion. Absent a clear or obvious error, there can be no plain error. See *People v. Sebby*, 2017 IL 119445, ¶ 48.

¶ 32                                III. CONCLUSION

¶ 33 Finding no plain error, we affirm the circuit court's judgment.

¶ 34 Affirmed.